## BOSTON ELEVATED R. CO. v. MALLEY, and three other cases.

District Court, D. Massachusetts. March 6, 1928.

Nos. 1774, 1776, 3102.

**Internal revenue ⬤⟹9(26)—Elevated railway company, while operated by state, held subject to capital stock tax (Sp. Acts Mass. 1918, c. 159; Revenue Act 1918, § 1000 [a], subd. I [Comp. St. § 5980n]).**

Boston Elevated Railway Company, while being operated by agents of the state under Sp. Acts Mass. 1918, c. 159, *held* subject to capital stock tax, under Revenue Act 1918, § 1000 (a), subd. 1 (Comp. St. § 5980n).

At Law. Action by the Boston Elevated Railway Company against one Malley, against one Casey, against one Mitchell, and against the United States. Judgments for defendants.

In Nos. 1774–1776:

Chas. W. Mulcahy, Ransom C. Pingree, and H. Ware Barnum, all of Boston, Mass., for plaintiff.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass., for defendants.

In No. 3102:

H. Ware Barnum, of Boston, Mass., for plaintiff.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass.

MORTON, District Judge. The question presented by these four cases is whether the Boston Elevated Railway Company was, while under public control, subject to the tax on capital stock imposed by Revenue Act 1918, § 1000 (Comp. St. § 5980n). This statute levies on corporations an "excise tax with respect to carrying on or doing business" (section 1000 [a], subd. 1), and it re-

lieves from the tax "any corporation which was not engaged in business * * * during the preceding year ending June 30." (Section 1000 [c]). Disregarding technicalities the case turns on whether the plaintiff was carrying on or doing business as a corporation during the period of public control.

The rather complicated arrangement under which the public took over the management and operation of the Boston Elevated Railway Company under Sp. Acts 1918, c. 159, has been fully and authoritatively described (see Opinion of the Justices to the Senate, 231 Mass. 607, 122 N. E. 763; Boston v. Treasurer of the Commonwealth, 237 Mass. 403, 130 N. E. 390; Id., 260 U. S. 309, 43 S. Ct. 129, 67 L. Ed. 274; Opinion of the Attorneys General of Massachusetts 1919, p. 20; Opinions of the Justices to the Legislature [Mass.] 159 N. E. 55, 70, November 22, 1927; Boston Elevated Railway v. Malley [D. C.] 288 F. 864); and it is not necessary to restate it here. The gist of it is that the company, in return for payments and guaranties by the commonwealth, abdicated its right to manage its property and affairs in favor of public trustees appointed by the Governor. The business was still conducted in the name of the company, and all contracts for labor and supplies relating to the operation of its railway were made in its name. It continued to be liable in contract and in tort, as it had previously been. The special act expressly provided that the trustees "shall be deemed to be acting as agents of the company and not of the commonwealth."

The basic facts leave but slight ground for the plaintiff's contention. An elaborate and ingenious argument has been made on its behalf based largely upon the use of the words "lease" and "take over" by the Supreme Judicial Court in describing the relations between the company and the commonwealth. 231 Mass. 609, 607, 122 N. E. 763. See, too, Opinion of the Justices of November 22, 1927 (Mass.) 159 N. E. 55. With respect to this terminology, Judge Peters observed: "It is not profitable to discuss whether the term 'lease' is properly descriptive of the legislative contract." Boston Elevated Railway v. Malley (D. C.) 288 F. 864, 870. It is the essential character of the arrangement as gathered from the special act and the opinions and decisions above cited, rather than the expressions used to describe it, upon which the present question turns.

In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460,

in which an analogous case was before the Supreme Court, it was said:

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." Day, J., at page 514 (37 S. Ct. 204).

Applying this criterion, I am clearly of opinion that the railway company was carrying on business during the period in question, and this without recourse to the activities of its directors as authorized by the special act, which might well become important makeweights, if the question were close. I have passed, without deciding it, the preliminary question whether the payments were, in the legal sense, voluntary, and therefore unrecoverable.

It should perhaps be noticed that the special act reserved to the commonwealth and its subdivisions the right "to tax the company or its stockholders in the same manner and to the same extent as if the company had continued to manage and operate its own property." Section 2. It would be a curious arrangement under which the corporation continued to be fully taxable as such for the benefit of the commonwealth, while it escaped taxation by the federal government.

Judgment for the defendant in Nos. 1774, 1775, and 1776. Demurrer sustained in No. 3102.