**BOSTON ELEVATED RY. CO. v. WELCH,**
Collector of Internal Revenue (two
cases).

Nos. 7073, 7116.

District Court, D. Massachusetts.

Jan. 11, 1939.

Charles W. Mulcahy, of Boston, Mass.,
for plaintiff in No. 7073.

Charles W. Mulcahy and J. Duke
Smith, both of Boston, Mass. (John H.
Moran, of Boston, Mass., on the brief),
for plaintiff in No. 7116.

John A. Canavan, U. S. Atty., and C.
Keefe Hurley, Asst. U. S. Atty., both
of Boston, Mass., for defendant in both
cases.

SWEENEY, District Judge.

These are two actions brought to recover Social Security taxes alleged to have been erroneously and illegally assessed and collected. As the same question is involved in each, although under separate titles of the Social Security Act, 42 U.S.C.A. § 301 et seq., they will be disposed of together, and will be treated as one case. The sole question is whether the plaintiff was, during the periods in question, an instrumentality of the Commonwealth of Massachusetts, or a political subdivision thereof, within the meaning of Sections 907(c) (6) and 811(b) (7) of the Social Security Act, 42 U.S.C.A. §§ 1107(c) (6), 1011(b) (7).

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, in accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The case was argued upon an original and a supplemental agreed statement of facts which the Court adopts as its findings of fact.

The plaintiff has filed returns and paid taxes under Title VIII and Title IX of the Social Security Act, sections 801 et seq., 901 et seq., 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., and has, more than six months prior to commencing these actions, seasonably filed claims for refund on which the Commissioner has failed to render decisions.

The identical section involved in each case is as follows:

"The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except— * * *

"Service performed in the employ of a State, a political subdivision thereof, or an instrumentality of one or more States or political subdivisions; * * *." 42 U.S. C.A. § 1011(b) (7).

Regulations promulgated by the Commissioner of Internal Revenue under authority of Sections 808 and 908, 42 U.S.C. A. §§ 1008, 1108, provide that the exemption shall extend to "every unit or agency of government, without distinction between those exercising functions of a governmental nature and those exercising functions of a proprietary nature."

This regulation, of course, adds nothing to the strength of the exemption in the

statute, but is indicative of a broad interpretation of the word "instrumentality" so as to include within the exempted class all units or agencies of government whether engaged in performing essential governmental functions or not. If the plaintiff is within the meaning of the term "instrumentality", then this regulation clears the way for its recovery and removes the possibility of a bar to such recovery, because the plaintiff was not engaged in an essential governmental function. It will first be necessary to bring the plaintiff within the classification of the statute, however, before it can lay claim to anything by virtue of the regulation.

The plaintiff is a corporation organized under the laws of the Commonwealth of Massachusetts in 1894, and until 1918 it was the owner and operator of a network of urban and inter-urban street railways. Since July 1, 1918, it has been managed and operated by a board of trustees appointed by the Governor of the Commonwealth pursuant to an agreement entered into by the Commonwealth and the plaintiff. Under the authority of the Public Control Act, Sp.St.Mass.1918, c. 159, the plaintiff surrendered its management and operation to trustees, and in return the Commonwealth guaranteed the dividends of the plaintiff corporation to its stockholders, and agreed to make up any deficits after exhausting a one million dollar reserve fund that the corporation had set up at the time that the trustees took over the roads. Among the other terms, it provided that the Commonwealth might draw any excess in the reserve fund over the one million dollars to the extent of advances that the Commonwealth might have made on account of deficits. The original term of the Public Control Act was ten years, but by subsequent legislation, St.Mass.1931, c. 333, this was extended to 1959 at which time the Commonwealth is bound to return the management and operation of the plaintiff's business to it with its reserve fund intact. In Re Opinion of Justices, 231 Mass. 603, 609, 122 N.E. 763, 765, this arrangement was termed "a legislative agreement for the lease to the commonwealth of a public utility to be operated for a limited time by public officers."

Since taking over the operation of the plaintiff's business, the Commonwealth either directly or through the Boston Metropolitan District has invested about sixty million dollars in the plaintiff's business. It owns by far a majority of all of the bonds outstanding (about sixty million dollars out of seventy-six million dollars issued). The stock of the corporation is widely held, and there are more than 200,000 shares outstanding. For the past three years, the Commonwealth has made up deficiencies which were each year in excess of one and one-half million dollars. The Commonwealth in turn assessed these deficiencies pro-rata among the cities and town served by the plaintiff corporation.

Separate and apart from this agreement, I do not believe that the plaintiff would contend that it is an instrumentality of the government any more than any other utility organized under Massachusetts laws. Something within the terms, or in the effect of the agreement must be found to bring it within the meaning of the exempting section of the statute, or the plaintiff is out of Court. The agreement clearly shows that the corporation still exists as such, has all of the powers that were originally accorded to it, but has "abdicated its right to manage its property and affairs in favor of public trustees appointed by the Governor. The business [is] was still conducted in the name of the company, and all contracts for labor and supplies relating to the operation of its railway [are] were made in its name. It continued to be liable in contract and in tort, as it had previously been. The special act expressly provided that the trustees 'shall be deemed to be acting as agents of the company and not of the commonwealth.'" Boston Elevated R. Co. v. Malley, D.C., 24 F.2d 758.

The plaintiff contends that the facts show that the Commonwealth of Massachusetts has undertaken the carrying out of an enterprise to accomplish an admittedly public purpose in the interests of the general welfare. Assuming all of this to be true, it does not necessarily follow that the adoption of such a policy by the Commonwealth operates to change the plaintiff from a private business into an instrumentality of government within the meaning of the Social Security Act. "It is still a particular business enterprise—the operation of a street railway—and the functions of the trustees are limited accordingly." Helvering v. Powers, 293 U.S. 214, 223, 55 S.Ct. 171, 172, 79 L.Ed. 291.

In order to make it an instrumentality within the meaning of the Act, it would be necessary for the Commonwealth to take

steps beyond those which it has taken. It would seem to be essential that the Commonwealth should have the ultimate right to make all decisions affecting the agency chosen. Whether this can be accomplished without absolute ownership of the agency is not decided. The plaintiff's ingenious argument aims at this mark or something close to it, but falls far short of hitting it.

The plaintiff says that the Commonwealth has control of the plaintiff as effectively as if it were the real owner, and points to the huge investment that it has made in the plaintiff's enterprise. The answer to this argument is that the Commonwealth is still devoid of title, and is far from a position where it can be said to be the owner of the plaintiff corporation in fact. The plaintiff argues that the acquisition of the stock of the plaintiff by a comparatively small investment would make it exempt under the statute as falling within the class of exemptions accorded to municipally owned lighting plants, waterworks and ferry lines. The answer to this argument is that, assuming for the moment that such acquisition would result in the plaintiff's being within the exemptions, nevertheless, such acquisition has not been made, and the whole intent of the legislative agreement is to acquire only the management and control during a fixed period, leaving all other rights vested in the plaintiff corporation itself. By the terms of the agreement the trustees individually and collectively are not a unit or agency of the government, but are acting as agents of the company.

That the Commonwealth may have expended, and will continue to expend huge sums of money under this agreement is of little consequence where the consideration for such expenditures is principally the vesting of the management and operation of the company's business in trustees appointed by the Commonwealth of Massachusetts rather than in directors elected by the stockholders. The plaintiff still continues to operate a private enterprise.

I therefore conclude that the plaintiff is not an instrumentality of the government, or a political subdivision thereof, within the meaning of the Social Security Act.

The defendant's motion for judgment in each case is granted. The plaintiff's motion for judgment and its requests for rulings in each case are denied.