OPINION OF THE JUSTICES TO THE GOVERNOR AND COUNCIL.

*Boston Elevated Railway Company. Governor. Executive Council. Constitutional Law,* Payments from the public treasury. *Words,* "Thereupon."

Under Part II, c. 2, § 1, art. 11, of the Constitution of the Commonwealth, a warrant signed by the Governor with the advice and consent of the Council is a condition precedent to payment by the Treasurer and Receiver General of a deficiency of which he has been notified by the trustees of the Boston Elevated Railway Company pursuant to Spec. St. 1918, c. 159, § 11, as amended.

The Governor and Council in their discretion may delay the issuance of a warrant for payment of a deficiency of which, pursuant to Spec. St. 1918, c. 159, § 11, as amended, the trustees of the Boston Elevated Railway Company have notified the Treasurer and Receiver General, until they have had a reasonable opportunity to ascertain the legality of the various elements entering into the computation by the trustees.

On April 30, 1941, the Governor and Council adopted and transmitted to the Justices the following order:

To the Honorable the Justices of the Supreme Judicial Court for the Commonwealth of Massachusetts:

WHEREAS, with relation to the Boston Elevated Railway Company it is provided by Special Acts of 1918, c. 159, section 9 and section 11, as amended, as follows:

"SECTION 9. Whenever the income of the company is insufficient to meet the cost of the service as herein defined, the reserve fund shall be used as far as necessary to make up such deficiency, and whenever, on the other hand, such income is more than sufficient to meet the cost of the service, the excess shall be transferred to and become a part of the reserve fund.

"SECTION 11. If, as of the last day of June in the year nineteen hundred and nineteen, or the last day of any June thereafter to and including the last day of June in the year nineteen hundred and thirty-four, or as of the last day of March in any year after the year nineteen hundred and thirty-four, the amount remaining in the reserve

fund shall be insufficient to meet the deficiency mentioned in section nine, it shall be the duty of the trustees to notify the treasurer and receiver general of the commonwealth of the amount of such deficiency, less the amount, if any, in the reserve fund applicable thereto, and the commonwealth shall thereupon pay over to the company the amount so ascertained. Pending such payment it shall be the duty of the trustee to borrow such amount of money as may be necessary to enable them to make all payments, including dividend payments, as they become due. If, as of the last day of any June thereafter to and including the last day of June in the year nineteen hundred and thirty-four, or as of the last day of March in any year after the year nineteen hundred and thirty-four, during the period of public operation, the reserve fund shall exceed the amount originally established, the trustees shall apply the excess, so far as necessary, to reimbursing the commonwealth for any amounts which it may have paid to the company under the provisions hereof, and the commonwealth shall thereupon distribute the amount so received among the cities and towns in which the company operates, in proportion to the amounts which they have respectively been assessed as provided in section fourteen.

In order to meet any payment required of the commonwealth under the provisions of this section the treasurer and receiver general may borrow at any time, in anticipation of the assessments to be levied upon the cities and towns, such sums of money as may be necessary to make said payments, and he shall repay any sums so borrowed as soon after said assessments are paid as is expedient." and

WHEREAS, it is provided in pt. 2d, c. II, s. 1, art. XI of the Constitution that "No moneys shall be issued out of the treasury of this commonwealth, and disposed of (except such sums as may be appropriated for the redemption of bills of credit or treasurer's notes, or for the payment of interest arising thereon) but by warrant under the hand of the governor for the time being, with

the advice and consent of the council, for the necessary defense and support of the commonwealth; and for the protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court"; and

WHEREAS, The Trustees of the Boston Elevated Company have notified the treasurer and receiver general that the amount of the deficiency referred to in said section 11 for the period ending March 31, 1941, less the amount in the reserve fund applicable thereto, is $2,341,167.29, and the treasurer and receiver general has caused the said sum of $2,341,167.29 to be placed upon a warrant for the purpose of paying over the same to the said company under the terms of said section 11, and such warrant is now before the governor for his signature, and the governor has requested the advice and consent of the council with relation thereto; and

WHEREAS, doubt exists as to the power and authority of the governor and council under the law;

ORDERED, that the Justices of the Supreme Judicial Court be required to give their opinion to the Governor and Council upon the following important questions of law:

1. Whether the provisions of pt. 2d, c. II, s. 1, art. XI of the Constitution of the Commonwealth require that a warrant providing for the payment of a deficiency of which the Treasurer and Receiver General has been notified by the Trustees of the Boston Elevated Railway Company, in accordance with section 11 of chapter 159 of the Special Acts of 1918, as amended, be signed by the Governor with the advice and consent of the Council, as a condition precedent to the payment by the Treasurer and Receiver General of the amount of such deficiency. If the answer to Question 1 is in the affirmative:

2. Whether doubt on the part of the Governor and Council as to the correctness of the deficiency as notified by the Trustees of the Boston Elevated Railway Company to the Treasurer and Receiver General in accordance with section 11 of chapter 159 of the Special Acts of 1918,

as amended, would as a matter of law give to the Governor the right to withhold his signature to said warrant, and give to the Council the right to withhold its advice and consent with relation to said warrant providing for payment of the said deficiency.

3. Have the Governor and Council the right to withhold payment of the alleged deficiency of the Boston Elevated Railway Company for the year ending March 31, 1941, pending a determination of the correctness of the amount of the said alleged deficiency?

4. Has the Governor the right to withhold his signature from the warrant providing for the payment of $2,341,-167.29 as a deficiency of the Boston Elevated Railway Company under the provisions of Special Acts of 1918, chapter 159, sections 9 and 11 as amended, and has the Council the right to withhold from the Governor its advice and consent with respect to approval of said warrant by his signature thereon, doubts having been raised as to the correctness thereof as notified to the Treasurer and Receiver General by the Trustees of the Boston Elevated Railway Company?

5. Is the Governor required to sign the warrant and is the Council required to give its advice and consent to the Governor with relation to the warrant providing for the payment of the deficiency to the Boston Elevated Railway Company for the year ending March 31, 1941, the payment of which is regulated by Special Acts of 1918, chapter 159, sections 9 and 11 as amended, notwithstanding the matter of doubts raised and presented to the Governor and Council as to the correctness of the amount of the deficiency?

On May 28, 1941, the Justices returned the following answers:

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court, in reply to your order of April 30, 1941, a copy of which is hereto annexed, respectfully submit these answers to the questions

therein contained. Copies of certain documents accompanied the order.

It appears from the order and the accompanying documents that on April 16, 1941, the board of trustees of the Boston Elevated Railway Company, created by and existing under Spec. St. 1918, c. 159, as amended, purporting to act under § 11 of said chapter as most recently amended by St. 1935, c. 99, notified the Treasurer and Receiver General of the Commonwealth that "as of the last day of March in the year Nineteen Hundred and Forty-one, the income of the Company during the period since the last day of March in the year Nineteen Hundred and Forty has been insufficient to meet the cost of the service as defined in said Act by the amount of Two Million Three Hundred Forty-one Thousand One Hundred Sixty-Seven Dollars and Twenty-nine Cents ($2,341,167.29); that on said thirty-first day of March 1940 and continuously since said date there has been no amount in the reserve fund provided by said Chapter 159 as amended, applicable thereto; and consequently that the amount of such deficiency less the amount in the reserve fund applicable thereto is Two Million Three Hundred Forty-one Thousand One Hundred Sixty-seven Dollars and Twenty-nine Cents ($2,341,167.29)." It appears also that the Treasurer and Receiver General made a request of the comptroller that "a warrant be drawn to cover the above payment" and that, accordingly, the comptroller has certified "that there is due upon the roll hereunto annexed the sum set against each name [in this instance "Boston Elevated Railway Deficiency Fund    Boston Elevated Railway Co    2 341 167 29"], amounting in the aggregate to $2,341,167 29 on account of Boston Elevated Railway Deficiency Fund    Ch 159, Spec Acts 1918    (see letter attached)" — a letter from the comptroller to the Governor and the Council in which he explained that, in compliance with the request of the Treasurer and Receiver General, "I am forwarding this Warrant to you for whatever action you deem advisable in the circumstances." See G. L. (Ter. Ed.) c. 29, § 18; *Opinion of the Justices*, 13 Allen, 593.

The questions submitted relate to the duties of the Governor and the Council with respect to the payment of the amount herein referred to in view of the provision of the Constitution of the Commonwealth, Part II, c. 2, § 1, art. 11, which is as follows: "No moneys shall be issued out of the treasury of this commonwealth, and disposed of (except such sums as may be appropriated for the redemption of bills of credit or treasurer's notes, or for the payment of interest arising thereon) but by warrant under the hand of the governor for the time being, with the advice and consent of the council, for the necessary defence and support of the commonwealth; and for the protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court." See also Constitution, Part II, c. 1, § 1, art. 4.

The questions submitted are, first, a preliminary question whether, by reason of the constitutional provision above quoted, a "warrant" for the payment by the Treasurer and Receiver General of the amount referred to "under the hand of the governor . . . with the advice and consent of the council" is a condition precedent to such payment, and, second, if such a warrant is a condition precedent to such payment, several questions, expressed in various terms, as to the right of the Governor to withhold such signature and of the Council to withhold such advice and consent. See *Opinion of the Justices*, 240 Mass. 616. In answering these questions we are limited by the Constitution to expressing our opinion on important questions of law respecting pending matters, in order that assistance may be gained in the performance of present duties. Answers to questions of fact or of expediency or to abstract questions of law cannot be required. See *Opinion of the Justices*, 301 Mass. 615, 617.

The questions submitted arise out of Spec. St. 1918, c. 159, as amended, particularly §§ 9 and 11 thereof, relating to the public management and operation of the Boston Elevated Railway Company. This act and other acts amendatory thereof were accepted by the company. Special St. 1918, c. 159, §§ 1, 12, provided for the public manage-

ment and operation of the company for a period of ten years and thereafter until the Commonwealth should elect to terminate such public management and operation. Statute 1931, c. 333, § 1, provided that such public management and operation should continue until July 1, 1959, and thereafter, unless sooner terminated as provided by Spec. St. 1918, c. 159, § 12. Statute 1931, c. 333, § 20, provided that this act "shall be regarded as amendatory of said chapter one hundred and fifty-nine of the Special Acts of nineteen hundred and eighteen, and this act and said chapter shall, for purposes of interpretation and construction, be treated as one act."

Special St. 1918, c. 159, § 1, provided for a board of trustees to consist of five persons to be appointed by the Governor with the advice and consent of the Council, removable for cause in the same manner. Section 2 provides that these trustees "shall manage and operate the Boston Elevated Railway Company hereinafter called the company, and the properties owned, leased or operated by it . . . and, subject to the provisions of this act, shall take and have possession of said properties in behalf of the commonwealth during the period of public operation, and, for the purposes of this act, shall, except as is otherwise provided in this act have and may exercise all the rights and powers of said company and its directors, and, upon behalf of said company, shall receive and disburse its income and funds . . . They shall have the right to regulate and fix fares . . . and shall determine the character and extent of the service and facilities to be furnished, and in these respects their authority shall be exclusive and shall not be subject to the approval, control or direction of any other state board or commission. In the management and operation of the said company and of the properties owned, leased or operated by it, as authorized by this act, the trustees and their agents, servants and employees shall be deemed to be acting as agents of the company and not of the commonwealth . . ." Special St. 1918, c. 159, § 3, provided that the "trustees shall have authority to make contracts in the name and on behalf of, and to issue stocks,

bonds and other evidences of indebtedness of, the company," and § 4 provided that, by "acceptance of this act, the company and the stockholders and directors thereof shall be deemed to have assented to and authorized all issues of stock, bonds and other evidences of indebtedness which the trustees may find necessary or advisable during the period of public operation, or which may be required during the period of public operation to carry out any existing or future obligations of the company." Statute 1931, c. 333, § 4, authorized the trustees to issue bonds of the company to the extent of $30,000,000, and provided that the "payment of interest as it accrues on said bonds shall be deemed part of the cost of the service as defined in" Spec. St. 1918, c. 159, § 6.

By Spec. St. 1918, c. 159, § 5, it was provided that the company, prior to or at the time of its acceptance of the act, shall provide for raising $3,000,000; that $1,000,000 "shall be set aside as a reserve fund to be used only for the purposes hereinafter specified, and the remaining two million dollars shall be subject to the disposition of the trustees to pay for the cost of additions and improvements to the company's property." We assume that this amount was raised.

Special St. 1918, c. 159, § 6, provides that the "trustees shall from time to time, in the manner hereinafter provided, fix such rates of fare as will reasonably insure sufficient income to meet the cost of the service, which shall include operating expenses, taxes, rentals, interest on all indebtedness, such allowance as they may deem necessary or advisable, for depreciation of property and for obsolescence and losses in respect to property sold, destroyed, or abandoned, all other expenditures and charges which under the laws of the commonwealth now or hereafter in effect may be properly chargeable against income or surplus, fixed dividends on all preferred stock of the company from time to time outstanding, and dividends on the common stock of the company from time to time outstanding . . . [at specified rates]. Dividends upon the common shares shall be payable quarterly, but no dividends shall be paid

upon such common shares in excess of the rates herein specified." But by St. 1931, c. 333, § 2, it is provided that dividends payable upon the common stock of the company "and included in the cost of the service under said chapter [Spec. St. 1918, c. 159] shall be reduced from six per cent to five per cent . . . so long as public management and operation continues."

Special St. 1918, c. 159, § 8, provides that the "reserve fund shall be used only for the purpose of making good any deficiency in income as provided in section nine or for reimbursing the commonwealth as provided in sections eleven and thirteen." Section 9 provided that whenever "the income of the company is insufficient to meet the cost of the service as herein defined, the reserve fund shall be used as far as necessary to make up such deficiency, and whenever, on the other hand, such income is more than sufficient to meet the cost of the service, the excess shall be transferred to and become a part of the reserve fund."

Special St. 1918, c. 159, § 11, as amended by St. 1935, c. 99, § 1, is as follows: "If, as of the last day of June in the year nineteen hundred and nineteen, or the last day of any June thereafter to and including the last day of June in the year nineteen hundred and thirty-four, or as of the last day of March in any year after the year nineteen hundred and thirty-four, the amount remaining in the reserve fund shall be insufficient to meet the deficiency mentioned in section nine, it shall be the duty of the trustees to notify the treasurer and receiver general of the commonwealth of the amount of such deficiency, less the amount, if any, in the reserve fund applicable thereto, and the commonwealth shall thereupon pay over to the company the amount so ascertained. Pending such payment it shall be the duty of the trustees to borrow such amount of money as may be necessary to enable them to make all payments, including dividend payments, as they become due. If, as of the last day of any June thereafter to and including the last day of June in the year nineteen hundred and thirty-four, or as of the last day of March in any year after the year nineteen hundred and thirty-four, during the period of public

operation, the reserve fund shall exceed the amount originally established, the trustees shall apply the excess, so far as necessary, to reimbursing the commonwealth for any amounts which it may have paid to the company under the provisions hereof, and the commonwealth shall thereupon distribute the amount so received among the cities and towns in which the company operates, in proportion to the amounts which they have respectively been assessed as provided in section fourteen. In order to meet any payment required of the commonwealth under the provisions of this section the treasurer and receiver general may borrow at any time, in anticipation of the assessments to be levied upon the cities and towns, such sums of money as may be necessary to make said payments, and he shall repay any sums so borrowed as soon after said assessments are paid as is expedient."

Special St. 1918, c. 159, § 13, is as follows: "It shall be the duty of the trustees to maintain the property of the company in good operating condition and to make such provision for depreciation, obsolescence and rehabilitation, that, upon the expiration of the period of public management and operation, the property shall be in good operating condition. If the period of public management and operation expires, control of the property shall then revert to the company, and if at that time the reserve fund shall be less than the amount originally established because the income during the period of public management and operation has been insufficient to pay the cost of the service, the commonwealth shall forthwith pay over to the company an amount sufficient to restore it to its original amount; and if the amount in said reserve fund is then in excess of the amount originally established and any amount required to meet the cost of the service to the expiration of such period, such excess shall be paid into the treasury of the commonwealth and distributed among the cities and towns in which the company operates in the same proportions as the assessments provided for by section fourteen."

Special St. 1918, c. 159, § 14, is as follows: "In case the commonwealth shall be called upon to pay to the trustees

or the company any amount under the provisions of sections eleven and thirteen, such amount with interest or other charges incurred in borrowing money for the purpose shall be assessed upon the cities and towns in which the company operates by an addition to the State tax next thereafter assessed in proportion to the number of persons in said cities and towns using the service of the company at the time of said payment, said proportion to be determined and reported to the treasurer and receiver general by the trustees from computations made in their discretion for the purpose."

Statute 1931, c. 333, § 3, provides in part that "If at any time while public management and operation continues a deficit shall occur of which notice is given to the treasurer and receiver general of the commonwealth under section eleven of said chapter one hundred and fifty-nine, the trustees of the Boston Elevated Railway Company, hereinafter called the trustees of the company, shall at the same time give like notice to the trustees of the metropolitan transit district created by chapter three hundred and eighty-three of the acts of nineteen hundred and twenty-nine . . . The trustees of the company shall also notify the department of public utilities whenever such a deficit shall occur. Upon receipt of such notice said department shall carry on such investigation as it may deem advisable of the operations and the expenses of the company, and shall make a report to the governor and the members of the metropolitan transit council in writing of its findings, together with any recommendations, whereby future deficits may be avoided or reduced, and the service improved. Such reports whenever made shall be made public."

Statute 1931, c. 333, § 19, is as follows: "None of the provisions of this act or of said chapter one hundred and fifty-nine shall be construed to constitute a contract binding upon the commonwealth other than (a) the provisions of section one of this act which define the term of public management and operation herein and therein provided for, (b) the provisions which define the terms and conditions under which during said term of public management and

operation the property owned, leased or operated by the company shall be managed and operated by the trustees of the company, (c) the provisions of sections four and eighteen of this act providing priorities of certain bonds, coupon notes or other evidences of indebtedness of the company and (d) the provisions of section thirteen of said chapter one hundred and fifty-nine, which provisions shall constitute a contract binding upon the commonwealth."

The situation created by the enactment of Spec. St. 1918, c. 159, and its acceptance by the Boston Elevated Railway Company was described in *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 413–417, as follows: "In essence this act, having been accepted by the railway companies, constitutes an agreement between the Boston Elevated Railway Company and the Commonwealth that the latter shall take over the management and operation of the railway company and shall pay therefor the amounts specified in way of compensation for the use thereof . . . The effect of the act when accepted, as it has been, was in its essential features a lease of the railway property to the commonwealth, or at least a contract for public operation upon stipulated terms . . . The compensation to be paid by the Commonwealth was a subject which might be determined by the Legislature. Manifestly it was rational to make adequate provision in the management of property of this nature for charges for depreciation, obsolescence, repair and maintenance . . . There would be no constitutional reason why that reasonable compensation could not be fixed by agreement, the Legislature representing the Commonwealth . . . Whether the bargain made by the Commonwealth with the Boston Elevated Railway Company was wise or not is not a judicial question. That was a matter to be settled by the Legislature . . . A street railway system was turned over for public management in return for the provisions made in the statute for the benefit of the owner. All those provisions, including that for rehabilitation of the railway property, are in the nature of compensation to be made for the use of the property. By the enactment of the statute the General Court determined that

those provisions are reasonable compensation for such use." See *S. C. sub nomine Boston* v. *Jackson*, 260 U. S. 309. See also *Opinion of the Justices*, 261 Mass. 523, 551. In the opinion just cited it was said, at pages 542–543, with reference to Spec. St. 1918, c. 159, as it would have been amended by a proposed bill: "Under said c. 159, as amended by the proposed bill, the Boston Elevated Railway Company, although privately owned, will not be privately managed. On the contrary, it is to be managed, controlled and operated wholly by the board of trustees who are appointed by the Governor, who constitute a public board, who are for all essential purposes public officers although under said c. 159, § 2, 'deemed to be acting as agents of the company and not of the commonwealth,' and whose duties are prescribed by a public statute enacted by the General Court pursuant to its constitutional prerogatives." See also *Helvering* v. *Powers*, 293 U. S. 214, 222–223. There was nothing in the amendment to be made by the bill then proposed that renders these statements inapplicable to said c. 159 apart from such amendment.

The provision in Spec. St. 1918, c. 159, § 11, as amended, particularly involved in the questions submitted, relating to payment by the Commonwealth of a "deficiency" resulting from insufficiency of the income of the company to meet the cost of the service as defined in the statute, is an integral part of said statute as amended. This provision, in connection with other provisions of the statute, created an obligation or liability of the Commonwealth that is to be dealt with as such by all officers of the Commonwealth in accordance with the terms of the statute, subject to controlling constitutional requirements. To what extent the obligation or liability so created is contractual and not merely statutory is immaterial for the purpose of answering the questions submitted with respect to the power and authority of the Governor and the Council under the existing statutes.

It is stated in the order that "doubt exists as to the power and authority of the Governor and Council under the law."

The first question submitted — a preliminary question — is "Whether the provisions of pt. 2d, c. II, s. 1, art. XI of the Constitution of the Commonwealth require that a warrant providing for the payment of a deficiency of which the Treasurer and Receiver General has been notified by the Trustees of the Boston Elevated Railway Company, in accordance with section 11 of chapter 159 of the Special Acts of 1918, as amended, be signed by the Governor with the advice and consent of the Council, as a condition precedent to the payment by the Treasurer and Receiver General of the amount of such deficiency."

It appears from said § 11, as amended, that the payment to the Boston Elevated Railway Company thereby authorized is to be made by the Commonwealth. It is referred to therein as a "payment required of the commonwealth," and the section further provides that, if "the reserve fund shall exceed the amount originally established, the trustees shall apply the excess, so far as necessary, to reimbursing the commonwealth for any amounts which it may have paid to the company under the provisions hereof, and the commonwealth shall thereupon distribute the amount so received" among the cities and towns that have been assessed under § 14. Under said § 11 the money with which to make the payment is to be obtained by the Treasurer and Receiver General in the first instance by borrowing "in anticipation of the assessments to be levied upon the cities and towns." Such an authorization naturally imports that the borrowing is to be upon the credit of the Commonwealth. See G. L. (Ter. Ed.) c. 29, §§ 47, 48. And § 14 provides that, in case "the commonwealth shall be called upon to pay" any amount under said § 11, "such amount . . . shall be assessed upon the cities and towns in which the company operates by an addition to the state tax."

The Boston Elevated Railway Company, under Spec. St. 1918, c. 159, as amended, remains in private ownership although under the management of public officers. The income arising under such management is not "received on account of the commonwealth" in the sense in which

those words are used in art. 63, § 1, of the Amendments to the Constitution, and is not in the "treasury of this commonwealth" within the meaning of Part II, c. 2, § 1, art. 11, of the Constitution. See *Opinion of the Justices*, 261 Mass. 523, 550. But the trustees were authorized to take possession of the properties owned, leased or operated by the company "in behalf of the commonwealth," Spec. St. 1918, c. 159, § 2, and the company, through the trustees thereof, is managed and operated by the Commonwealth and not by any subdivision thereof. See *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 413–414. This is true though the company is operated only in some of the cities and towns of the Commonwealth, and though taxes for the payment of a "deficiency" are assessed on such cities and towns. § 14. The obligation or liability to pay such "deficiency" according to the terms of the statute is upon the Commonwealth and not upon any subdivision thereof. § 11. Money is borrowed by the Commonwealth to meet this obligation or liability of the Commonwealth created by the statute in anticipation of an assessment under § 14 thereof. And the "assessment authorized by § 14 is an apportionment of one of the burdens of general taxation." *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422, 431. See also *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 420–421. Money obtained by the Commonwealth to discharge its obligation or liability to the company, either by borrowing or as a part of the State tax, is not received on account of the company or on account of the cities and towns in which the company operates. Compare *Opinion of the Justices*, 300 Mass. 630, 637–640, and cases cited. Such money is received "on account of the commonwealth" within the meaning of art. 63, § 1, of the Amendments to the Constitution, and consequently is to be regarded as in the treasury of the Commonwealth. See *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 289.

The payment to the company under said § 11 of a "deficiency" therein referred to is not within any of the exceptions stated in Part II, c. 2, § 1, art. 11, of the Constitution,

to the requirement thereof that no "moneys shall be issued out of the treasury of this commonwealth" but by warrant of the Governor with the advice and consent of the Council. Since the payment of such a "deficiency" is to be made out of money in the treasury of the Commonwealth, a warrant such as is described in the constitutional provision is "a condition precedent to the payment by the Treasurer and Receiver General of the amount of such deficiency."

We answer the first question submitted "Yes."

In accordance with the terms of the order, since the answer to the first question submitted is in the affirmative, we consider the other questions submitted.

The second question submitted is "Whether doubt on the part of the Governor and Council as to the correctness of the deficiency as notified by the Trustees of the Boston Elevated Railway Company to the Treasurer and Receiver General in accordance with section 11 of chapter 159 of the Special Acts of 1918, as amended, would as a matter of law give to the Governor the right to withhold his signature to said warrant, and give to the Council the right to withhold its advice and consent with relation to said warrant providing for payment of the said deficiency."

The part of said § 11 as above amended, already set forth, bearing particularly upon this question, is the provision of said section: "If . . . as of the last day of March in any year after the year nineteen hundred and thirty-four, the amount remaining in the reserve fund shall be insufficient to meet the deficiency mentioned in section nine, it shall be the duty of the trustees to notify the treasurer and receiver general of the commonwealth of the amount of such deficiency, less the amount, if any, in the reserve fund applicable thereto, and the commonwealth shall thereupon pay over to the company the amount so ascertained."

Obligations or liabilities of the Commonwealth, not created directly by the Constitution, are created by acts and resolves of the General Court or by officers of the Commonwealth duly authorized by such acts and resolves to incur such obligations or liabilities. The discharge of such

obligations or liabilities by the payment of money (except in cases expressly mentioned in the constitutional provision and not here material) is a matter within the power of the Governor and the Council to the extent hereinafter stated. The purpose of Part II, c. 2, § 1, art. 11, of the Constitution, above quoted, however, was "to insure that no payments should be made from the public treasury except for public purposes and in accordance with the law. It was not the purpose to give the Governor and Council power to veto contracts or purchases lawfully made by authorized officers or to refuse to honor debts and obligations lawfully incurred." *Willar* v. *Commonwealth,* 297 Mass. 527, 529.

There properly is no suggestion of doubt as to the constitutionality of the statute in providing for the payment of such a deficiency as is here in question, as a payment of money for a public purpose. See *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 413–414, 420–421. The constitutional duty of the Governor and the Council under such a constitutional statute, therefore, is to inform themselves whether payment of the amount of the deficiency according to the notification given by the trustees to the Treasurer and Receiver General is "in accordance with the law" or, in the terms of the constitutional provision, "agreeably to the acts and resolves of the general court," and, particularly, whether it is in accordance with the provisions of Spec. St. 1918, c. 159, as amended, and, if such payment is "in accordance with the law," to issue a warrant accordingly.

It may well be that it is within the power of the General Court to fix, by statute, as a part of an obligation or liability of the Commonwealth, the time for discharge of such obligation or liability by payment, so that the extent of the obligation or liability is to be determined on the basis of the time so fixed — as, for example, by a statute providing for interest when payment is delayed beyond a fixed date. But the General Court cannot, by fixing, by statute, the time as of which an obligation or liability of the Commonwealth shall arise and payment of money in discharge

thereof shall be made, as in said § 11 by providing that "the commonwealth shall thereupon pay over to the company the amount so ascertained," deprive the Governor and the Council of reasonable opportunity, in the exercise of executive judgment and discretion, to inform themselves whether payment of the amount of the deficiency according to the notification by the trustees to the Treasurer and Receiver General is in accordance with the law. See *Opinion of the Justices*, 211 Mass. 632, 634. Such a determination is made by virtue of executive power inherent under the Constitution in the Governor and the Council. See *Opinion of the Justices*, 302 Mass. 605, 618. Compare *Opinion of the Justices*, 13 Allen, 593; 208 Mass. 610, 613. The statute, however, does not purport to deprive the Governor and the Council of reasonable opportunity to inform themselves whether the proposed payment is in accordance with the law. The use of the word "thereupon" in the phrase quoted does not raise such an implication. This word, depending upon its context, may be construed "as an adverb of time, meaning immediately thereafter," or as used "to express the relation of cause or of condition precedent." *Yuma County Water Users' Association* v. *Schlecht*, 262 U. S. 138, 145. See also *Putnam* v. *Langley*, 133 Mass. 204, 205. The latter meaning of the word is somewhat more natural in the light of the context but, even if the word conveys some idea of immediacy, it imports payment in accordance with normal administrative practice and particularly in accordance with constitutional requirements. The word "thereupon" is also used in the same section in the provision that the Commonwealth, upon being reimbursed by the company for amounts paid, "shall thereupon distribute the amount so received among the cities and towns in which the company operates" — obviously meaning distribution in accordance with normal administrative practice. In conformity with the principle here stated, the Governor has the "right to withhold his signature to said warrant," and the Council has "the right to withhold its advice and consent with relation to said warrant," pending reasonable opportunity for them to inform

themselves whether the proposed payment is in accordance with the law.

However, the reference in the question submitted to the "correctness of the deficiency as notified by the Trustees of the Boston Elevated Railway Company to the Treasurer and Receiver General" raises a subsidiary question whether, in inquiring whether the proposed payment is in accordance with the law, the Governor and the Council are concluded by this notification as to the amount to be paid, or, on the other hand, may go behind such notification to inform themselves whether it is correct with respect to the amount to be paid.

So far as the amount to be paid by the Commonwealth reflects obligations or liabilities lawfully incurred by the trustees 'under authority of Spec. St. 1918, c. 159, as amended, the Governor and the Council have no right to refuse to honor such obligations or liabilities even though they may doubt the wisdom or expediency of incurring such obligations or liabilities. *Willar* v. *Commonwealth*, 297 Mass. 527, 529. And this statute — as appears from the lengthy quotations therefrom in this opinion — confers upon the trustees wide discretion in the management and operation of the company including the making of expenditures in behalf of the company to be included in the "cost of the service" and thus reflected in the amount payable by the Commonwealth. The trustees have the right "to regulate and fix fares" and to "determine the character and extent of the service and facilities to be furnished." In these respects their authority is "exclusive" and they are not "subject to the approval, control or direction of any other state board or commission." § 2. Even though by St. 1931, c. 333, § 3, if a deficit occurs "of which notice is given to the treasurer and receiver general," the trustees are required also to "notify the department of public utilities," such department is required only to "carry on such investigation as it may deem advisable of the operations and the expenses of the company" and to "make a report to the governor and the members of the metropolitan transit council in writing of its findings, together with

any recommendations, whereby future deficits may be avoided or reduced, and the service improved." Moreover, in defining "cost of the service" in Spec. St. 1918, c. 159, § 6, it is provided that there shall be included therein such allowance as the trustees "may deem necessary or advisable, for depreciation of property and for obsolescence and losses in respect to property sold, destroyed, or abandoned." With respect to charges for depreciation it was said in *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 417–418, that the conclusion of the trustees "would not be set aside unless unsupported in law." Further, this section provides that "cost of the service" shall include "all other expenditures and charges which under the laws of the commonwealth now or hereafter in effect may be properly chargeable against income or surplus" — importing wide discretion in the trustees to make or incur such "expenditures and charges" if they are authorized by "the laws of the commonwealth." See also § 3, whereunder the trustees have a right to issue all evidences of indebtedness of the company "which the trustees may find necessary or advisable." And see § 14, whereunder the tax to be assessed upon the cities and towns in which the company operates is to be assessed in accordance with a proportion "to be determined and reported to the treasurer and receiver general by the trustees from computations made in their discretion for the purpose."

It is to be observed that, notwithstanding the wide discretion conferred upon the trustees by other provisions of the statute, so far as notification by the trustees to the Treasurer and Receiver General of the amount of the "deficiency" and of the amount payable by the Commonwealth is concerned there is no provision in § 9 or in § 11 for the exercise of discretion by the trustees. By these sections it is made the duty of the trustees to "notify" the Treasurer and Receiver General of an amount determined by mathematical computation based upon these elements: (a) income of the company, (b) "cost of the service" as defined in the statute, particularly § 6 thereof; see also St. 1931, c. 333, § 4, and (c) the amount, if any, remaining

in the reserve fund. It is the amount "ascertained" by this mathematical computation that is to be paid by the Commonwealth. The inclusion, in the computation of the amount to be so paid, of any other element would not be in accordance with the law. The notification is made by the trustees who, as public officers managing and operating the company in behalf of the Commonwealth, presumably are in possession of the books of the company showing the three elements. Such notification has been described as a "demand upon the Treasurer and Receiver General for payment to meet that deficiency" — the amount of which has been determined by the trustees. *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422, 430. While the trustees have wide discretion with respect to some, at least, of the elements upon which the amount to be paid by the Commonwealth is based, they are not authorized by law to act outside the discretionary or other powers conferred upon them by statute.

We find nothing in the provisions of the statute requiring the trustees to notify the Treasurer and Receiver General of the amount to be paid by the Commonwealth that makes such notification conclusive upon the Commonwealth that the elements included in the computation by them of the amount to be so paid are, in all particulars, in accordance with the law. In our opinion the provision of § 11, as amended, that the Commonwealth shall "pay over to the company the amount so ascertained," refers to the amount so ascertained in accordance with statutory authority, and not to an amount ascertained by the trustees as stated in the notification regardless of their statutory authority with respect to the elements upon which such amount is based. In other words, the obligation or liability of the Commonwealth to pay the "deficiency" is limited to an obligation or liability to pay the amount thereof legally incurred, and the notification by the trustees to the Treasurer and Receiver General is not in the nature of an adjudication that the amount stated by them constitutes such an obligation or liability. An intention on the part of the General Court in enacting the statute, or on the part of the Boston Elevated

Railway Company in accepting it, to make the trustees acting thereunder final arbiters of the extent of their own authority is not lightly to be inferred. We conclude, therefore, that in determining whether there is an obligation or liability upon the Commonwealth for the amount of the "deficiency," discharge of which by payment is authorized by law, the Governor and the Council have the right to consider whether the elements entering into the computation of such "deficiency" are in accordance with the law.

While it is not the purpose of Part II, c. 2, § 1, art. 11, of the Constitution to give the Governor and the Council power to refuse to pay obligations and liabilities lawfully incurred (*Willar* v. *Commonwealth*, 297 Mass. 527, 529; compare *Rice* v. *Governor*, 207 Mass. 577), it is a matter for the exercise by them of sound executive judgment and discretion to determine whether there is sufficient reason for delay by them in issuing a warrant for the payment of money in discharge of such an obligation or liability, in order to give reasonable opportunity for a determination whether the elements entering into the computation are in accordance with the law. It is a matter for the exercise of such executive judgment and discretion for them to determine what constitutes such reasonable opportunity. In the exercise of such executive judgment and discretion, reasonable doubt on the part of the Governor and the Council as to the existence or amount, according to law, of an obligation or liability could be found by them to be a sufficient reason for delay in issuing a warrant. Compare *Opinion of the Justices*, 120 Mass. 600, which, however, is in some respects distinguishable. The governing principles of law cannot be stated more precisely.

The principles here stated are not affected by the provisions of Spec. St. 1918, c. 159, § 14, relating to the assessment of the tax upon the cities and towns in which the company operates, and we need express no opinion as to the effect of delay in issuing the warrant upon such assessment. See *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422, 434.

Subject to the explanations and limitations stated we answer the second question submitted "Yes."

The three remaining questions present in substance the same question as that presented by the second question, though they are stated in somewhat different terms. Subject to the explanations and limitations herein stated, we answer the third question submitted "Yes," the fourth question submitted "Yes," and the fifth question submitted "No."

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> LOUIS S. COX.
> JAMES J. RONAN.