AUDITOR OF THE COMMONWEALTH *vs.* TRUSTEES OF BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. · March 2, 1942. — July 21, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Boston Elevated Railway Company.   Auditor of the Commonwealth.*

The books and accounts kept by the trustees of the Boston Elevated Railway Company, constituted by Spec. St. 1918, c. 159, as amended and extended by St. 1931, c. 333, are not "accounts" of "departments, offices, commissions, institutions and activities of the commonwealth" within the meaning of G. L. (Ter. Ed.) c. 11, § 12, and the Auditor of the Commonwealth cannot require their production for his examination.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on April 30, 1941.

The case was heard by *Qua*, J.

*W. S. McCallum,* by permission of the Attorney General, for the petitioner.

*W. B. Downey,* (*C. A. McCarron* with him,) for the respondents.

FIELD, C.J. This is a petition for a writ of mandamus brought in the Supreme Judicial Court. G. L. (Ter Ed.) c. 249, § 5, as amended by St. 1938, c. 202. The petitioner is the Auditor of the Commonwealth. Arts. 17 and 64 of the Amendments to the Constitution. G. L. (Ter. Ed.) c. 11; c. 54, § 62, as amended by St. 1935, c. 257, § 5. The respondents are the persons constituting the board of trustees of the Boston Elevated Railway Company, created by Spec. St. 1918, c. 159, § 1, appointed by the Governor with the advice and consent of the Council, as thereby authorized, herein referred to as the Public Trustees. The powers and duties of such trustees are prescribed by said Spec. St. 1918, c. 159, as amended and extended by St. 1931, c. 333, herein referred to as the Public Control Act.

The petitioner has made demand upon the respondents "to be allowed to examine and audit the books and records of account of the said . . . [respondents] in connection with their public operation and management of the said Boston Elevated Railway Company," and the respondents have declined to comply with the petitioner's demand. The petitioner prays for a writ of mandamus commanding the respondents "to produce for examination, and to permit . . . [him] and his assistants to examine all books and records aforesaid, and commanding said . . . [respondents] to afford such reasonable facilities and assistance for such examination as the Court may deem proper."

The respondents filed an answer in which they admitted some of the allegations of the petition and denied others, and made certain affirmative allegations. The petitioner traversed none of the allegations of the answer. G. L. (Ter. Ed.) c. 249, § 5, as amended. *Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111, 112. The case was heard by a single justice of this court on the petition and answer and an agreement by the parties that "the Trustees have continued in effect the system of books kept by the railway before the Trustees took control, and that the Trustees have supervision, control, dominion and possession of the books." No evidence was introduced.

The single justice made rulings, including a ruling "that the books and accounts to which this petition relates are not 'accounts' of 'departments, offices, commissions, institutions and activities of the commonwealth' within the meaning of G. L. (Ter. Ed.) c. 11, § 12, which it is the duty of the Auditor of the Commonwealth to audit," and ordered the petition dismissed. The petitioner excepted.

If the ruling of the single justice above recited was right, the petitioner is not entitled to relief in this proceeding, and no other question need be considered. This ruling was right.

General Laws (Ter. Ed.) c. 11, § 1, provides: "There shall be a department to be known as the department of the state auditor under his supervision and control, organized as provided in this chapter." Section 12 provides, in part, as follows: "The department of the state auditor shall annually make a careful audit of the accounts of all departments, offices, commissions, institutions and activities of the commonwealth . . . and for said purpose the authorized officers and employees of said department of the state auditor shall have access to such accounts at reasonable times and said department may require the production of books, documents and vouchers," with certain express inclusions and exceptions not here material.

The words "the accounts of all departments, offices, commissions, institutions and activities of the commonwealth" used in this statute are comprehensive terms. But the meaning of these words in particular instances cannot be determined solely by dictionary definitions. In the striking language of Mr. Justice Holmes in *Towne* v. *Eisner*, 245 U. S. 418, 425, a "word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." There are numerous illustrations of this principle in our own decisions. See, for example, *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 382. Whether the statutory phrase in question includes the Public Trustees must be determined in the light of their nature and func-

tions and their relation to the Boston Elevated Railway Company (herein referred to as the company) and of relevant statutes.

The nature and functions of these trustees and their relation to the company were considered recently in *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 574–580, citing previous cases and opinions. The company is a private corporation organized for profit to carry out a public purpose, the transportation of passengers for hire as a common carrier. Notwithstanding the Public Control Act the "company retains its corporate existence" and "continues to be the owner of the properties or rights therein" constituting the railway system. Page 579. And the company continues to derive profits from its railway system by reason of the provision in the Public Control Act for dividends to its stockholders, which, though fixed in amount, are in effect guaranteed by the Commonwealth by the provision of the statute that if the "income of the company is insufficient to meet the cost of the service" including the payment of these dividends — and the reserve fund provided by the statute is insufficient for the purpose — the deficiency shall be paid "to the company" by the Commonwealth out of money raised by taxation. Spec. St. 1918, c. 159 (see St. 1931, c. 333, § 2), §§ 6, 8, 9, 11 (as amended by St. 1935, c. 99, § 1), 13, 14. *Opinion of the Justices,* 309 Mass. 609. *Boston Elevated Railway* v. *Commonwealth,* 310 Mass. 528, 581. Moreover, under the Public Control Act the company's railway system continues to be used for the public purpose for which it was used before that statute took effect — the transportation of passengers as a common carrier.

The Public Control Act, as is disclosed by its terms, was enacted for this public purpose, solely for the general welfare and not for private profit. See *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 413. But the Public Control Act was not a statute only. By reason of acceptance thereof by the company it was also, in the respects here material, a contract between the Commonwealth and the company. The Legislature did not purport by the

statute "to take or to authorize the taking of possession of the properties of the company or the subsequent management and operation thereof by virtue of any sovereign power other than the power to enter into a contract with the company for the carrying out of a public purpose." *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 577. The contract between the Commonwealth and the company, embodied in the statute, provided that the Commonwealth, acting through the Public Trustees — who undoubtedly are public officers — should take such possession of the properties of the company and manage and operate them as therein provided. And the payment of fixed dividends to the stockholders as therein provided — even though, by reason of insufficiency of the "income of the company" for that purpose, payment is required to be made by the Commonwealth "to the company" out of money raised by taxation — is in no sense "a gratuity to its stockholders" but is "in the nature of compensation to be made for the use of the property" in carrying out the public purpose of the Public Control Act. *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 417. *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 575–576, 583–584.

The Public Control Act and the contract between the Commonwealth and the company provided for what is described in the Public Control Act as "public management and operation of the railway system" of the company (Spec. St. 1918, c. 159, §§ 1, 12), or more broadly as management and operation or management of the "company." Spec. St. 1918, c. 159, §§ 1, 2. St. 1931, c. 333, § 1. See also Spec. St. 1918, c. 159, §§ 3, 13, 15, 16; St. 1931, c. 333, §§ 3, 17, 19. *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 575. Specific duties are imposed and specific powers are conferred upon the Public Trustees as such. But no question is here involved as to any difference in the scope of their statutory duties and powers and their contractual duties and powers to deal with the railway system of the company. These duties and powers are described in the Public Control Act in the same terms — indeed in the

same provisions of the statute. Pages 577–578. It is provided that for the purposes of the statute, except as otherwise provided therein, the Public Trustees "have and may exercise all the rights and powers of said company and its directors, and, upon behalf of said company, shall receive and disburse its income and funds." And such trustees have express authority with certain limitations "to make contracts in the name and on behalf of, and to issue stocks, bonds and other evidences of indebtedness of, the company." With limited exceptions, such trustees, instead of the directors, act for the company. And they even act for the company in some matters ordinarily requiring action of the stockholders. Spec. St. 1918, c. 159, §§ 2, 3, 4. *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 579.

It is apparent from the Public Control Act as a whole, considered both as a statute and as a contract, that thereunder the Public Trustees — though public officers — manage and operate the railway system of the company through the medium of the company as a corporate entity (page 579) — though they are not required to act in procedural respects in the manner of either directors or stockholders. But these trustees are authorized to bind the company in highly important matters, even, as was held in *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, by discontinuing the operation of an elevated structure on a location granted to the company with the result that the company forfeited such location. Pages 579, 580, 582–583. These trustees, as already stated, may incur obligations "in the name and on behalf of" the company, even to the extent of issuing "stocks, bonds and other evidences of indebtedness of, the company." "'Actions and suits for the recovery of obligations arising out of the public management must be brought by and against the railway company and not the Commonwealth.' *Opinion of the Justices*, 261 Mass. 523, 550." *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 580. And the Public Control Act contains a specific provision — the scope of which need not be considered — that in "the management and operation of the said company and of the properties owned,

leased or operated by it, as authorized by this act, the trustees . . . shall be deemed to be acting as agents of the company." Spec. St. 1918, c. 159, § 2. See *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 419; *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 580.

The Public Control Act, in providing that deficiencies shall be met out of a reserve fund provided for by the statute, and, if that is inadequate, out of money raised by taxation, describes such a "deficiency" as arising when the "income of the company is insufficient to meet the cost of the service" as defined by the statute, including among other things the payment of dividends fixed thereby. Spec. St. 1918, c. 159, § 9. Obviously, since the "income" that is to be considered in determining whether there is a "deficiency" is the "income of the company," the other factor that is to be considered in such determination, the "cost of the service" chargeable against such income, must be such cost to the company. Spec. St. 1918, c. 159, § 6. And the resulting "deficiency," if any, must be a deficiency of the company. That this is true appears from the fact that, if such deficiency is to be met by the Commonwealth out of money raised by taxation, payment of the amount thereof is to be made "to the company." Spec. St. 1918, c. 159, § 11 (as amended), § 13. This situation was recognized in *Opinion of the Justices*, 261 Mass. 523, 550, where the opinion was expressed with respect to a proposed bill — equally applicable to the statute now under consideration — that the provision of art. 63, § 1, of the Amendments to the Constitution that all "money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof" would not "apply to the receipts of the company during the period of public management." It was there said: "The income which may accrue from the property is in no sense public income, although restrictions are placed upon its use by the terms of the proposed bill. Profits which may accrue, save as thus restricted, belong to the railway company and not to the Commonwealth." This language was quoted with approval in *Boston Elevated Railway* v. *Commonwealth*, 310 Mass.

528, 579–580. See also *Opinion of the Justices*, 309 Mass. 609, 622–623. But, as was pointed out in *Opinion of the Justices*, 309 Mass. 609, 622–623, when occasion arises for the Commonwealth to pay the amount of such a "deficiency" "to the company" out of money raised by taxation, in accordance with its contractual obligation to make such payment, the payment is a payment "out of the treasury of this commonwealth," subject to the constitutional provisions applicable to such payments. Part II, c. 2, § 1, art. 11, of the Constitution.

From the conclusion that the "income" resulting from public management of the railway system, the "cost of the service" incurred in such public management, and any "deficiency" resulting therefrom are those of the company as a corporate entity, it follows that the accounts reflecting such items are the accounts of the company as a corporate entity and not the accounts of the Public Trustees as public officers, although such accounts are kept under the direction of such trustees by virtue of their statutory and contractual duties and powers to act for the company. And so far as such accounts reflect obligations of the company incurred by the Public Trustees "in the name and on behalf of" the company, such accounts are also accounts of the company and not accounts of the Public Trustees. The situation is closely analogous to that of a private corporation operated in the ordinary way by corporate officers, directors and stockholders. The accounts reflecting the financial operations of the company are its accounts, and not the accounts of such officers, directors or stockholders. Doubtless the Public Control Act might have provided that the Public Trustees, as public officers, should keep accounts independent of the accounts of the company, but it did not do so.

It is shown by the record that the Public Trustees have, in fact, acted in accordance with the interpretation here given to the Public Control Act. It was agreed by the parties at the hearing before the single justice, and he found, that "the Trustees have continued in effect the system of books kept by the railway before the Trustees

took control, and that the Trustees have supervision, control, dominion and possession of the books." From this fact it appears that the Public Trustees, by virtue of their duty and power to act for the company, have continued in its behalf to keep the accounts of the company as a corporate entity. And whether or not this finding necessarily negatives the existence of any independent accounts of the Public Trustees as public officers, the answer of the respondents not traversed by the petitioner negatives the existence of any accounts other than those of the company.

The result is that, though the Boston Elevated Railway Company during the period of public management is managed and operated by Public Trustees in accordance with the provisions of the Public Control Act, the accounts relating to such management and operation, being the "accounts" of the company as a corporate entity and not the "accounts" of such trustees as public officers, are not within the scope of G. L. (Ter. Ed.) c. 11, § 12, requiring the Auditor of the Commonwealth to "make a careful audit of the accounts of all departments, offices, commissions, institutions and activities of the commonwealth."

This conclusion is not in conflict with the opinion expressed in *Opinion of the Justices*, 309 Mass. 609, 626-627, that, when the Public Trustees under the provisions of the Public Control Act (Spec. St. 1918, c. 159, § 11, as amended) have notified the Treasurer and Receiver General of a "deficiency" requiring the payment of money by the Commonwealth to the company, the Governor has the "right to withhold his signature" to a warrant for such payment, and the Council has the "right to withhold its advice and consent with relation to said warrant," pending reasonable opportunity for them to inform themselves whether the proposed payment is in accordance with the law. This is merely the application of a principle applicable generally to warrants for the payment of money "out of the treasury of this commonwealth." Constitution, Part II, c. 2, § 1, art. 11. Yet the existence of this power of the Governor and Council does not imply that

the Auditor of the Commonwealth is required by the provisions of G. L. (Ter. Ed.) c. 11, § 12, to make an audit of the accounts of creditors of the Commonwealth generally, and it raises no such implication with respect to the accounts of the Boston Elevated Railway Company when that company may be entitled to receive a payment from the Commonwealth by reason of the provisions of the Public Control Act.  The Public Control Act, however, provides expressly that, when notice of a deficiency has been given to the Treasurer and Receiver General, the Public Trustees shall also "notify the department of public utilities" and such department shall "carry on such investigation as it may deem advisable of the operations and the expenses of the company, and shall make a report to the governor and the members of the metropolitan transit council in writing of its findings, together with any recommendations, whereby future deficits may be avoided or reduced, and the service improved."  St. 1931, c. 333, § 3.  *Opinion of the Justices,* 309 Mass. 609, 627.  When this situation arises, directly affecting the treasury of the Commonwealth, it is the department of public utilities and not the Auditor of the Commonwealth that by express provision is to make an investigation including, in substance, an audit of the accounts of the company relating to its operating expenses. This provision with respect to the department of public utilities furnishes additional support for the conclusion already reached on other grounds that no audit by the Auditor of the Commonwealth under the provisions of G. L. (Ter. Ed.) c. 11, § 12, is contemplated by the Public Control Act.

*Exceptions overruled.*